UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MELINDA MONET, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 16-cv-02040 (APM) |
| NANCY BERRYHILL, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This action to recover improperly withheld benefits under the Social Security Act has had an interesting history. On July 25, 2017, the court dismissed this action on the ground that it lacked subject matter jurisdiction to consider pro se Plaintiff Melinda Monet's claims against Defendant Nancy Berryhill, the Acting Commissioner of Social Security. *See* Mem. Op., ECF No. 28; Order, ECF No. 29. Plaintiff then filed a battery of motions asking the court to reconsider its ruling.[1] *See* Mot. to Modify Order, ECF No. 30; Mot. for Recons., ECF No. 31; Mot. to Amend/Correct Compl., ECF No. 32. Those motions framed Plaintiff's case in a different light, one the court did not appreciate when it originally entered judgment in favor of Defendant. As a result, on September 20, 2017, the court ordered Defendant to answer a series of questions designed to determine whether Defendant had in fact improperly withheld any benefits payments from Plaintiff. Order, ECF No. 45, at 2–3; *see also* Min. Order, Oct. 5, 2017.

---

[1] Plaintiff also filed a Notice of Appeal, ECF No. 41, but the court retains jurisdiction over this matter to consider her pending motions. *See Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991) ("[W]hen both a Rule 60(b) motion and an appeal are pending simultaneously, appellate review may continue uninterrupted. At the same time, the District Court may consider the 60(b) motion and, if the District Court indicates that it will grant relief, the appellant may move the appellate court for a remand in order that relief may be granted.").

Defendant then conducted an investigation and filed a series of responses aimed at answering the court's questions. *See* Def.'s Resp. to Pl.'s Post-J. Mot., ECF No. 48 [hereinafter Def.'s Resp.]; Def.'s Suppl. Resp. to Pl.'s Post-J. Mot., ECF No. 50 [hereinafter Def.'s Suppl. Resp.]; Def.'s Third Suppl. Resp. to Pl.'s Post-J. Mot., ECF No. 54 [hereinafter Def.'s Third Suppl. Resp.]; Def.'s Reply to Pl.'s Obj. to Def.'s Third Suppl. Resp., ECF No. 57 [hereinafter Def.'s Reply]. Defendant's responses made clear that Plaintiff's attempt to recover improperly withheld benefits concerned two separate but related amounts.

As to the first amount, Defendant now concedes that the Social Security Administration ("SSA") improperly withheld $10,865 from Plaintiff. According to Defendant, on February 17, 2006, the SSA determined that it had overpaid Plaintiff $13,254.80 from March 2005 through January 2006, a period during which Plaintiff was held in custody during the pendency of a criminal case against her in this District Court. Def.'s Resp. at 1–2; Def.'s Suppl. Resp. at 1–2. (The reason for Plaintiff's pre-trial custody is of greater relevance to the second amount the SSA withheld and is explained in the next paragraph.) As a result of the overpayment determination, the SSA began to withhold all or a portion of Plaintiff's benefits on a monthly basis starting in October 2006 to make itself whole. Def.'s Third Suppl. Resp., Ex. 1, at 8–9. Plaintiff appealed the overpayment determination, and in March 2008 an Administrative Law Judge ("ALJ") waived recovery of the overpayment, thereby relieving Plaintiff of any repayment obligation. Def.'s Resp. at 2; Def.'s Suppl. Resp. at 2. The SSA, however, never effectuated the ALJ's waiver decision and continued to withhold benefits on a monthly basis for another eight years until July 2016. As a result, from October 2006 to June 2016, the SSA erroneously withheld $10,865 from Plaintiff. Def.'s Third Suppl. Resp. at 2; Ex. 1. The SSA ceased making monthly withholdings in July 2016 and also waived the balance of $2,389.80 from Plaintiff's overpayment ($13,254.80 - $10,865 =

$2,389.80). Def.'s Suppl. Resp. at 2. Thus, as of July 2016, the SSA believed that Plaintiff had satisfied her obligation to repay the overpayment.

After the court in this case directed the SSA to make further inquiries, the SSA discovered its error. It admitted that it had improperly withheld $10,865 from Plaintiff by not effectuating the ALJ's waiver decision. The SSA promptly issued Plaintiff a check for that amount. Def.'s Resp. at 2; Def.'s Suppl. Resp. at 2. Plaintiff's claim to recover withheld benefits is therefore moot with respect to the $10,865.

As to the second amount, Defendant stands by its withholding of benefits payments based on 42 U.S.C. § 402(x)(1)(A)(ii)(III). Under that provision of the Social Security Act, the SSA is required to withhold benefits from an individual who "is confined by court order in an institution at public expense in connection with . . . a finding that such individual is incompetent to stand trial under allegation of such an offense[.]" In February 2006, the SSA learned that the presiding judge in Plaintiff's criminal case, Judge Richard Leon, had found Plaintiff incompetent to stand trial and had ordered her to remain in custody pending further evaluations. Def.'s Third Suppl. Resp. at 2. As a result, under Section 402(x)(1)(A)(ii)(III), the SSA determined that it had to cease benefits payments to Plaintiff, which it did in full from March 2006 until Plaintiff's release from custody in October 2006. Def.'s Third Suppl. Resp. at 2. The court approximates the amount withheld during that period to be $8,715.[2] The SSA restarted Plaintiff's benefits payments in December 2006. *Id.*[3]

---

[2] The court assumes that, if the total amount for two months of benefits was $2,490, *see* Def.'s Third Suppl. Resp., Ex.1, or $1,245 per month, the total amount for seven months of withheld benefits (March 2006 to September 2006) was $8,715.

[3] To be more precise, the SSA actually restarted Plaintiff's benefits for October 2006 and November 2006, totaling $2,490, after her release from custody, but applied that amount to reduce the overpayment. Def.'s Third Suppl. Resp. at 2. Those two months of improperly withheld benefits are included within the $10,865 that the SSA has paid to Plaintiff. *See id.*, Ex. 1, at 8–9.

Plaintiff contests the SSA's withholding under Section 402(x)(1)(A)(ii)(III) on two grounds. First, Plaintiff contends she "was at all times a detainee"—presumably she means an ordinary pre-trial detainee—in her criminal case and thus the withholding of payments was improper. Pl.'s Obj. to Def.'s Third Suppl. Resp., ECF No. 55, at 1–2. She is mistaken. Judge Leon issued multiple orders that clearly demonstrate that he found her incompetent to stand trial. In an Order dated October 17, 2005, Judge Leon found "by a preponderance of the evidence that the defendant is presently suffering from a mental disease rendering her 'mentally incompetent to the extent [s]he is unable to understand the nature and consequences of the proceedings against [her] or to assist properly in [her] defense.'" Order, *United States v. Monet*, No. 05-cr-116-RJL, ECF No. 54, at 1 (quoting 18 U.S.C. § 4241(d)). As a consequence of that finding, pursuant to 18 U.S.C. § 4241(d), Judge Leon ordered Plaintiff into the custody of the Attorney General "for treatment in a suitable facility . . . as is necessary to determine whether there is a substantial probability that in the foreseeable future she will attain the capacity to permit the trial to proceed." *Id.* at 2. Following that Order, starting on or about December 12, 2005, Plaintiff was confined to the Federal Medical Center, Carswell in Fort Worth, TX, where evaluators determined that she would not regain competence absent "the involuntary administration of psychotropic medication." Gov't.'s Bench Memo., *Monet*, No. 05-cr-116-RJL, ECF No. 60, at 2. Then, on April 27, 2006, pursuant to 18 U.S.C. § 4246(b), Judge Leon entered an order to begin the process of determining whether Plaintiff should be civilly committed. He directed the "Federal Medical Center at Carswell [to] conduct a psychiatric or psychological examination and report assessing whether the defendant is presently suffering from a mental disease or defect as a result of which her release would create a substantial risk of bodily injury to another person or serious damage to property of another." Order, *Monet*, No. 05-cr-116-RJL, ECF No. 66. The resulting examination concluded

that Plaintiff's unconditional release would pose those dangers. Gov't.'s Request for Initiation of Proceedings Pursuant to 18 U.S.C. § 4246, *Monet*, No. 05-cr-116-RJL, ECF No. 68, at 3–4. Finally, on July 21, 2006, Judge Leon ordered Plaintiff committed to the custody of the Attorney General "for further evaluations and proceedings to be conducted under 18 U.S.C. § 4246(d)." Order, *Monet*, No. 05-cr-116-RJL, ECF No. 69. Ultimately, those proceedings never concluded, as following a government motion, Judge Leon dismissed the case against Plaintiff on October 5, 2006. Order, *Monet*, No. 05-cr-116-RJL, ECF No. 72. As the foregoing history demonstrates, there can be little doubt that Judge Leon found Plaintiff incompetent to stand trial and therefore, under Section 402(x)(1)(A)(ii)(III), Plaintiff was disqualified from receiving benefits.

Next, Plaintiff argues that the SSA was not permitted to withhold benefits because, even if she was deemed incompetent, she was not "hospitalized in a suitable facility at public expense." Pl.'s Obj. to Def.'s Reply, ECF No. 59, at 3. Plaintiff believes that the propriety of the SSA's withholding of benefits must turn on whether she had been so "hospitalized," because Judge Leon's Order of October 17, 2005, directed that Plaintiff be "hospitalized for treatment in a suitable facility" to determine whether she might regain competency. *Id.* at 4. That argument, however, is utterly misplaced. Section 402(x)(1)(A)(ii) nowhere uses the words "hospitalized in a suitable facility at public expense." Instead, it merely requires, as a condition of withholding benefits, that the individual be "confined by court order in an institution at public expense." 42 U.S.C. § 402(x)(1)(A)(ii). Plaintiff certainly was "confined" in such an "institution" from March 2006 to October 2006, as she was resident at the Federal Medical Center, Carswell in Fort Worth, TX, pursuant to orders issued by Judge Leon. Thus, Plaintiff's contention that the government never confined her to a suitable hospital facility is entirely irrelevant. The SSA therefore properly withheld benefits payments from Plaintiff from March 2006 until her release later that year.

5

*   *   *

Based on the foregoing analysis of the pertinent facts and law, the court rules on Plaintiff's pending motions as follows:

1. Plaintiff's Application to Modify Order Entered July 25, 2017, ECF No. 30, is denied;

2. Plaintiff's Motion to Reconsider Order Dismissing Complaint Date 7-25-17, ECF No. 31, (a) is denied as moot insofar as the SSA already has paid Plaintiff $10,865 in improperly withheld benefits, and (b) is denied insofar as the SSA properly withheld benefits from March 2006 until the time of her release under 42 U.S.C. § 402(x)(1)(A)(ii);

3. Plaintiff's Application to File Amended Complaint, ECF No. 32, is denied;

4. Plaintiff's Motion for Leave to Proceed on Appeal In Forma Pauperis, ECF No. 42, is granted; and,

5. Plaintiff's Application to Provide Plaintiff and Defendant With Sealed Order from Judge McBryde, Case 1:05-cr-00116-RJL-1, Entered on 9-5-2006, Document #70, ECF No.58, is granted. With Judge Leon's consent, that document will be placed on this docket.

Finally, the court vacates its Memorandum Opinion and Order of July 25, 2017, because the court's rationale for dismissing this action is no longer valid. Should this matter be appealed, the Court of Appeals should consider the grounds for the court's entry of judgment in favor of

Defendant to be the reasons set forth in this Memorandum Opinion and Order.[4]  A separate "Final Order" entering judgment in favor of Defendant is filed herewith.

This is a final, appealable order.

DATED:  November 22, 2017

Amit P. Mehta
United States District Judge

---

[4] During a telephonic conference with the parties on November 21, 2017, the court indicated that it would treat Defendant's various reports concerning amounts paid and withheld from Ms. Monet as a motion for summary judgment.  Ms. Monet did not object to proceeding in that fashion, as she wished the court to issue a final order to take an appeal.